UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PENNY JO MUNGER,

        Plaintiff,

v.                                     Case No:  8:15-cv-2937-T-33AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

_____/

### REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, it is recommended that the Commissioner's decision be reversed and remanded.

**I.**

**A.**      **Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 225-26).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 93-116, 121-24, 128).  Plaintiff then requested an administrative hearing (Tr. 134-35).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 44-92).  Following the hearing, the ALJ issued a partially favorable decision finding Plaintiff not disabled prior to October 24, 2014, and accordingly denied Plaintiff's claims for benefits prior to that date, while finding that, beginning on October 24, 2014, Plaintiff became disabled and continued to be disabled through the date of the decision (Tr. 20-43).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-11).  Plaintiff then timely

filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

### B.      Factual Background and the ALJ's Decision

Plaintiff, who was born in 1957, claimed disability beginning April 17, 2012 (Tr. 225). Plaintiff has an eleventh grade education (Tr. 238).  Plaintiff's past relevant work experience included work as a sales clerk and waitress (Tr. 74-75, 239).  Plaintiff alleged disability due to manic depression, anxiety, panic attacks, right hand and back problems, sinusitis, scoliosis, back pain, and carpal tunnel syndrome (Tr. 237).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since April 17, 2012, the alleged onset date (Tr. 27).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: disorders of the spine; left mild reflex sympathetic dystrophy (RSD), also diagnosed as complex regional pain syndrome (CRPS), left thumb degenerative joint disease (DJD), and arthritis; obesity; bipolar disorder; depression; and posttraumatic stress disorder (PTSD) (Tr. 27).  Notwithstanding the noted impairments, the ALJ determined that, since the alleged onset date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 27).  The ALJ then concluded that, prior to October 24, 2014, Plaintiff retained a residual functional capacity ("RFC") to perform medium work, except that Plaintiff could only frequently climb ramps and stairs; could occasionally climb ladders, ropes, and scaffolds; could frequently stoop, crouch, and crawl; had to avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and hazards, such as moving mechanical parts and equipment, tools, and machinery; could occasionally handle and finger with the left non-

dominant hand; could perform routine tasks on a sustained basis; and could understand, carry out, and remember simple instructions that were not quota-driven (Tr. 29).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible prior to October 24, 2014 (Tr. 29).  The ALJ further concluded that, beginning on October 24, 2014, Plaintiff retained the RFC to perform medium work, except that Plaintiff could only frequently climb ramps and stairs; could occasionally climb ladders, ropes, or scaffolds; could frequently stoop, crouch, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and hazards, such as moving mechanical parts and equipment, tools, and machinery; could occasionally handle and finger with the left nondominant hand; could understand, carry out, and remember simple instructions that were not quota-driven; and was expected to be off task 10 percent of the workday (Tr. 34).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that, since April 17, 2012, Plaintiff could not perform her past relevant work (Tr. 35).  Given Plaintiff's background,  RFC, and the testimony of the VE, the ALJ concluded that, prior to October 24, 2014, Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a laundry laborer, drier attendant, and amusement park worker (Tr. 36, 78-84).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that, prior to October 24, 2014, Plaintiff was not disabled (Tr. 35-37).  The ALJ also concluded that, beginning on October 24, 2014, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform, so, although Plaintiff was not disabled prior to

October 24, 2014, she became disabled on that date and continued to be disabled through the date of the administrative decision (Tr. 37).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. 20 C.F.R. § 404.1569a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates

against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

## III.

Plaintiff argues here that the ALJ erred by (1) failing to properly consider Plaintiff's psychological assessments for the period prior to October 24, 2014; (2) failing to set forth a proper credibility finding; (3) improperly relying upon the VE's testimony; and (4) failing to determine that Plaintiff was disabled under the grids. For the reasons that follow, the ALJ failed to apply the correct legal standards and the ALJ's decision is not supported by substantial evidence.

### A.      Psychological Assessments

Plaintiff first contends that the ALJ failed to properly consider Plaintiff's psychological assessments for the period prior to October 24, 2014. Specifically, Plaintiff contends that "[t]he ALJ improperly weighed the psychological evidence of record creating a false dichotomy in the evidence on October 24, 2014 when the psychological evidence prior to October 24, 2014 unambiguously supported the additional mental work restriction, which rendered the Plaintiff disabled" (Doc. 21, at 9-10). As Plaintiff correctly argues, her complaints to her mental health practitioners and her mental status findings remained generally consistent throughout the record, including prior to October 24, 2014. Indeed, the evidence of record indicates that Plaintiff exhibited impaired attention and concentration; appeared severely depressed, irritable,

and anxious with a guarded or dysphoric mood and labile, flat, or restricted affect; presented with suicidal ideations but no plan or intent; and experienced anhedonia, decreased energy, and memory deficits throughout 2013 and 2014 (Tr. 475-76, 477-78, 479, 516-17, 537-38, 542).  In fact, in April 2013, Dr. David Donahue submitted a Psychiatric Review Technique in which he opined that Plaintiff experienced marked difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace (Tr. 459-60) and a Mental Residual Functional Capacity in which he noted several areas where Plaintiff was either constantly or markedly limited (Tr. 464-66).

Furthermore, the ALJ's reliance upon a decline in Plaintiff's Global Assessment of Functioning ("GAF") scores as indicative of disability onset, when Plaintiff's complaints and mental status examination results remained relatively consistent, is misplaced.  A GAF score indicates the clinician's assessment of the individual's overall functioning but does not itself reveal a particular type of limitation and does not constitute an assessment of a claimant's ability to work.  *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015); *Ward v. Astrue*, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008).  Indeed, GAF scores bear no direct correlation to the severity requirements of the mental disorders listings.  *Thornton*, 597 F. App'x at 613; *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th Cir. 2015) (citation omitted).  As such the Commissioner has declined to endorse use of the GAF scale in disability determinations.  *Wind v. Barnhart*, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005).

Here, in discussing Plaintiff's credibility prior to October 24, 2014, the ALJ explicitly acknowledged as much, noting:

> The record also contains several scores on the Global Assessment of Functioning (GAF) scale ranging from 41 to 70 (Exhibits 8F, 11F, 14F, 15F).  These scores are reflective of a wide range of symptoms.  However, a GAF score is only one tool in assessing a claimant's mental condition and must be considered in light

> of the medical evidence of record.  As discussed above, the medical evidence in this case does not support any serious level of severity.  Notably, the Commissioner has specifically declined to endorse the GAF scale for use in disability programs and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Accordingly, the undersigned has afforded these GAF scores little weight.

(Tr. 33-34) (footnotes omitted).  Notwithstanding, in determining Plaintiff's disability onset, the ALJ concluded that, on October 24, 2014, Plaintiff presented with significantly reduced mental functioning and, though Plaintiff presented with mental status abnormalities that were present prior to October 24, 2014, such as short-term memory deficits and a flat affect, Plaintiff was noted to be severely depressed with a reduced GAF score on and after October 24, 2014 (Tr. 34-35).  The ALJ cited to subsequent treatment notes again indicating that Plaintiff was severely depressed and indicating a reduced GAF score, despite ongoing medication, as indicative of further deterioration of Plaintiff's mental condition (Tr. 35).

Despite explicitly noting the inapplicability of the GAF scale, the ALJ relied predominantly upon GAF scores in determining that Plaintiff's condition deteriorated on October 24, 2014.  Further, the ALJ relied upon the finding that Plaintiff was found to be "severely depressed" on at least two occasions after the onset.  Prior to the onset, however, Plaintiff was similarly found to be severely depressed on numerous occasions and noted to experience several mental deficits (*see, e.g.,* Tr. 516-17, 537-38, 540).  Accordingly, the ALJ's rationale for finding a disability onset on October 24, 2014, due to deteriorating mental impairments is not supported by substantial evidence.  As a result, the decision of the ALJ should be reversed and remanded to reconsider the evidence of Plaintiff's mental impairments both prior to and subsequent to October 24, 2014, in determining whether Plaintiff suffered from a disabling mental impairment prior to that date, and, if so, to provide substantial evidence in support of that finding.

### B.    Credibility

Plaintiff next argues that the ALJ improperly assessed Plaintiff's credibility regarding her subjective complaints.  In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. § 404.1529.  In social security disability cases, credibility determinations fall within the province of the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*).  Typically, the ALJ makes credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*).  To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929.  When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1562 (citation omitted).

In considering Plaintiff's subjective complaints, the ALJ concluded that, though Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible prior to October 24, 2014 (Tr. 29).  According to Plaintiff, the ALJ erred in reaching that conclusion because the ALJ failed to

provide adequate and explicit reasons for the credibility finding and failed to consider a number of factors in setting forth the credibility finding.  Plaintiff initially contends that the ALJ improperly considered the lack of medical evidence coinciding with the alleged disability onset date and improperly made assumptions as to why Plaintiff stopped working in April 2012 in making a credibility determination.  As the Commissioner argues, however, the ALJ properly cited several reasons for discounting Plaintiff's statements regarding her disability onset date and the reason for her inability to work (Tr. 29).  The record reflects that Plaintiff injured herself in March 2012 (Tr. 400) and was released to regular duties around August 2012 but, as reported by Plaintiff, was fired from her job prior to that time (Tr. 394).  In July 2012, Plaintiff reported being laid off after working for ten years at Walmart and that she had returned to light duty work and then regular duty work after her thumb injury but was subsequently fired (Tr. 400). Subsequently, Plaintiff reported in September 2012 that she was recently fired from her job and, in December 2012, reported that she was not currently working because she had been let go (Tr. 388, 481).  Not until July 2014 did Plaintiff state that she lost her job at Walmart after the onset of left hand pain (Tr. 547).  Prior to that, however, Plaintiff did not state that she ceased working on or around April 2012 due to any of her impairments or because she was unable to work as a result of limitations imposed by such impairments.  Rather, Plaintiff consistently stated that she was simply terminated from her employment (Tr. 388, 394, 400, 481).[1]  The ALJ was permitted to consider such inconsistencies between Plaintiff's alleged disability onset and her explanation for her inability to work with statements made to health practitioners.  *See* 20 C.F.R. § 404.1529(c)(4) (stating that the Commissioner will consider any

---

[1]  As the ALJ correctly stated, a determination that a claimant is not disabled is warranted if the RFC and vocational abilities make it possible for the claimant to perform work existing in the national economy, but the claimant remains unemployed because of an inability to get work, the lack of work in the local area, or the hiring practices of employers (Tr. 30).  20 C.F.R. § 404.1566(c)(1)-(3).

inconsistencies in the evidence and the extent to which any conflicts exist between a claimant's statements and the rest of the evidence).  As such, the ALJ did not err in considering such inconsistencies.

The ALJ likewise did not err in considering the lack of evidence around April 2012 demonstrating that Plaintiff suffered from debilitating impairments at or around the alleged disability onset date.  In determining the disability onset date of nontraumatic origin, the ALJ considers the claimant's allegations, work history, medical evidence, and other evidence.  SSR 83-20, 1983 WL 31249, at *2-*3 (1983).  "Medical reports containing descriptions of examinations and treatment of the individual are basic to the determination of the onset of disability." SSR 83-20p, 1983 WL 31249, at *2.  "In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available[,]" but "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record."  SSR 83-20p, 1983 WL 31249, at *3.  As the ALJ noted, though Plaintiff alleged a disability onset of April 17, 2012, there was a noticeable lack of evidence at or around the alleged disability onset date.  Instead, as the ALJ stated, the evidence of record did not indicate a sudden onset of any new medical impairment or a sudden worsening of any existing medical condition in or around April 2012 (Tr. 29).  Given that the alleged onset date was not supported by and was inconsistent with the evidence of record, the ALJ did not err in considering the lack of evidence supporting the alleged onset date.

Plaintiff also argues that the ALJ improperly considered the evidence with respect to Plaintiff's subjective complaints related to her physical impairments.  Plaintiff asserts that the evidence of record supports her allegations of debilitating wrist and back impairments.  As the ALJ concluded, however, the record belied such assertion (Tr. 30-31).  Notably, Plaintiff complained since 1980 of back pain secondary to scoliosis but proceeded to work for a number

of years at the substantial gainful activity level without any physical therapy or surgical intervention (Tr. 30, 228-29, 519-20).  The ALJ correctly concluded that the lack of more advanced treatment beyond the conservative use of medications to treat Plaintiff's back pain and symptoms weighed against a finding that Plaintiff's back impairment was disabling  *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (noting that the record showed there was ample medical evidence to support the ALJ's conclusion that the plaintiff's subjective complaints were not entirely credible where the plaintiff received conservative treatment, lacked consistent treatment, and lacked prescription pain medication); *see also* 20 C.F.R. § 404.1529(c)(3)(v) (stating that treatment, other than medication, a claimant receives or has received for relief of pain or symptoms is a factor to be considered in considering a claimant's subjective complaints).

Beyond that, the ALJ cited to the medical evidence of record, which indicated that Plaintiff's allegations regarding the severity of her physical impairments were not entirely credible (Tr. 30-31).  For example, as the ALJ noted, Plaintiff demonstrated full muscle strength, no muscle atrophy, normal sensation, normal reflexes, and no edema in all of her extremities upon examination in October 2013 (Tr. 30, 520-22).  The only abnormalities noted at that time included pain in all wrist movements, positive Tinel on the left wrist, positive Phalen on the left wrist, and hypertonic, tender paraspinal musculature in the lumbar spine (Tr. 521-22).  The ALJ found those abnormalities credible and thus incorporated limitations into the RFC to account for limitations stemming from the wrist and back impairments (Tr. 29-31).  Indeed, the ALJ concluded that Plaintiff could perform a reduced range of medium work with only frequently stooping, crouching, crawling, and climbing of ramps and stairs; occasionally climbing ladders, ropes, or scaffolds; avoidance of concentrated exposure to extreme cold,

extreme heat, humidity, vibration, and hazards that could exacerbate the physical impairments; and occasionally handle and finger with the left nondominant hand (Tr. 29-30).

Though Plaintiff complained of severe pain in the wrist and back in the pain questionnaires (Tr. 255-57, 286-89), the record did not support such extreme limitations based upon those impairments. As the ALJ articulated, the objective medical evidence and treatment notes indicated that Plaintiff was not as limited as alleged with respect to her wrist or back (Tr. 29-32). For instance, though in July 2012 Plaintiff exhibited extreme tenderness over the basal joint of the left wrist with crepitus and mild tenderness at the extensor compartment, she also had a negative Finkelstein's test and was nontender in the radiocarpal joint, A1 pulley of the joint, MCP joint of the thumb, and STT joint (Tr. 400-01). X-rays obtained that day indicated only mild joint space narrowing of the basal joint, and the MRI results indicated no evidence of pathology (Tr. 400-01). Dr. Richard Valdesuso noted that Plaintiff had left basal joint arthritis and crepitus of the right side but no pain and pre-existing arthritis in both thumbs (Tr. 401). Dr. Valdesuso provided Plaintiff a cortisone injection and instructed her to return to his office in two weeks (Tr. 401). Notably, though Dr. Valdesuso informed Plaintiff that she would be susceptible to periodic exacerbations, especially with over use, Dr. Valdesuso stated that he hoped to release her to full duty and place her at maximum medical improvement in two weeks (Tr. 401). At the follow-up appointment two weeks later, Dr. Valdesuso noted that Plaintiff stated the cortisone injection helped, she felt at least 50% better, the left basal joint was much less tender, and the STT joint was nontender (Tr. 397). Dr. Valdesuso opined that the wrist would continue to get better over time (Tr. 397). About six weeks later, Dr. Valdesuso noted that Plaintiff was still doing okay, Plaintiff's thumb was only intermittently symptomatic, there was mild tenderness and crepitus in the left thumb, and Plaintiff's left basal joint appeared to be moderately well with only mild symptoms (Tr. 394). Dr. Valdesuso reported that Plaintiff

could return to regular duties as tolerated at that time (Tr. 394).  Plaintiff's left basal joint arthritis flared up again in October 2012 and December 2012, despite a cortisone shot in October, so Dr. Valdesuso provided Plaintiff with a gel that helped somewhat by January 2013 (Tr. 385, 388, 391).  During the January 2013 office visit, Dr. Valdesuso administered a steroid injection and told Plaintiff to return in four months (Tr. 385).  In August 2013, Plaintiff complained of back pain and left hand pain in the thumb area but was only at the appointment to establish as a new patient (Tr. 510).

X-rays taken of the wrist and of the bilateral hands in October 2013 each showed no evidence of acute fracture, dislocation, or bony abnormality (Tr. 524, 526).  Lumbar spine X-rays taken at the same time indicated straightening of the lumbar lordosis that might be due to muscle spasms and increased sclerosis at the posterior elements of L5-S1, which may represent posterior facet arthropathy (Tr. 525).  Also, in October 2013, presented for a consultative examination in which she demonstrated pain in all wrist movements, positive Tinel on the left, positive Phalen on the left, and hypertonic, tender paraspinal musculature in the lumbar spine (Tr. 519-21).  Upon examination, however, Plaintiff's upper extremities indicated no deformity, edema, erythema, clubbing, cyanosis, spasticity, rigidity, involuntary movements, tremors, or atrophy, and Plaintiff's muscle strength was normal at 5/5 bilaterally, pulses were palpable and equal bilaterally, sensory nerves were normal, sensation to fine touch and temperature were normal, and strength and fine manipulation were normal (Tr. 521).  Plaintiff could oppose her thumb to her fingers, touch her finger tips to her palm, and hold a pen and sign her name (Tr. 521).  With respect to her lower extremities, Plaintiff exhibited no deformity, edema, erythema, clubbing, cyanosis, ulcer, pain, tenderness, decreased sensation bilaterally, or atrophy (Tr. 522).  Plaintiff's muscle strength was normal at 5/5 bilaterally, sensory nerves were normal, sensation to fine touch and temperature were normal, and pulses were palpable and equal bilaterally (Tr.

522).  As to her spine, no deformities were present and there was no indication of scoliosis as

Plaintiff's alignment appeared normal (Tr. 522).  Plaintiff could perform a tandem gait, could

squat halfway due to pain, and could walk on toes and heels bilaterally (Tr. 522).  Following

that, Plaintiff complained of pain in her hand in December 2013 and April 2014 (Tr. 532-33,

546).

Although Plaintiff complained of pain in her wrist and back, the findings upon

examination and the objective medical evidence did not support Plaintiff's allegations that she

suffered from disabling impairments.  Instead, as the ALJ articulated, the evidence showed that

Plaintiff's statements regarding the level of her limitations was not entirely credible.  Rather,

the evidence supported the limitations set forth by the ALJ in the RFC.  The ALJ appropriately

discussed the evidence of record in discounting Plaintiff's subjective complaints of pain

regarding her wrist and back, and substantial evidence supports her decision in that regard.

Plaintiff further contends that the ALJ should have addressed Plaintiff's daily activities

in setting forth the credibility determination.  Under 20 C.F.R. § 404.1529, a claimant's daily

activities constitutes just one of a number of factors relevant to a claimant's symptoms that an

ALJ considers when making a credibility determination.  20 C.F.R. § 404.1529(c)(3).  Namely,

when considering a claimant's subjective complaints, the ALJ considers: (i) the claimant's daily

activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other

symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and

side effects of any medication the claimant takes or has taken to alleviate pain or other

symptoms; (v) treatment, other than medication, the claimant receives or has received for relief

of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or

other symptoms, such as lying on his or her back, standing for 15 to 20 minutes every hour, or

sleeping on a board; and (vii) any other factors concerning the claimant's functional limitations

and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1520(c)(3)(i)-(vii).  Although the ALJ must articulate explicit and adequate reasons for discrediting a claimant's allegations of disabling symptoms, the ALJ need not cite to particular phrases or formulations as long as the decision reflects that the ALJ did not simply issue a broad rejection, which is not enough to enable a district court to conclude that an ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citations and quotations omitted).  In this instance, though the ALJ did not explicitly address Plaintiff's daily activities in discussing Plaintiff's subjective complaints, the ALJ cited to substantial evidence supporting the credibility determination.  Upon remand, however, the ALJ should consider, to the extent necessary, Plaintiff's daily activities in determining the credibility of Plaintiff's subjective complaints.

### C.      VE Testimony

Plaintiff next contends that the ALJ erred by improperly relying upon the testimony of the VE and by failing to elicit a proper rationale for resolving inconsistencies between the testimony of the VE and the Dictionary of Occupational Titles ("DOT").  In doing so, Plaintiff relies upon SSR 00-4p.  Social Security Rulings constitute agency rulings published under the authority of the Commissioner of Social Security and bind all components of the Social Security Administration, including the ALJ.  20 C.F.R. § 402.35(b)(1); *Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001).  SSR 00-4p addresses situations where an ALJ elicits testimony from a VE which conflicts with the occupational information found in the DOT.  SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  Essentially, when a VE provides evidence about the requirements of a job or occupation, SSR 00-4p requires the ALJ to inquire as to any possible conflict between the VE evidence and information provided in the DOT.  *Id.* at *2.  If the VE's

evidence appears to conflict with the DOT, SSR 00-4p directs the ALJ to obtain a reasonable explanation for the apparent conflict. *Id.* In the case at hand, the VE provided an explanation during the hearing regarding any potential conflicts between the VE's testimony and the DOT (Tr. 76-84). Namely, the VE explained that, where her findings deviated from the DOT, the VE based her findings upon her own observation and job analysis (Tr. 76-84). Contrary to Plaintiff's assertion, such an explanation suffices to resolve the conflict between the VE's testimony and the DOT.

Notwithstanding the foregoing, Plaintiff essentially contends that the explanation provided by the VE was not sufficient because the VE needed to provide greater explanation for the conflict and that the ALJ had an independent duty to resolve any potential conflicts. Even where an ALJ finds a conflict exists between the VE's testimony and the DOT, the Eleventh Circuit has determined that the ALJ may still rely on that testimony. Prior to the promulgation of SSR 00-4p, the Eleventh Circuit addressed the proper procedure for resolving a conflict between a VE's testimony and the DOT. In *Jones v. Apfel*, the Eleventh Circuit held that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." 190 F.3d 1224, 1229-30 (11th Cir. 1999) (citation omitted). In reaching that conclusion, the Court determined that the DOT did not constitute the sole source, or even a comprehensive source, of admissible information concerning occupational information. *Id.* at 1230; *see* 20 C.F.R. § 404.1566(d). Accordingly, under *Jones*, an ALJ may rely upon the testimony of a VE regardless of whether it conflicts with the DOT.

After the Eleventh Circuit issued its *Jones* opinion, the Social Security promulgated its 00-4p ruling. Subsequent to the promulgation of SSR 00-4p, some uncertainty arose as to the continuing viability of *Jones*. *Corbitt v. Astrue*, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *5 (M.D. Fla. Apr. 17, 2008). In unpublished opinions, the Eleventh Circuit addressed the

applicability of *Jones* in light of the Social Security Administration's subsequent issuance of SSR 00-4p.  *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938-39 (11th Cir. 2011) (*per curiam*) (cited herein as *Jones II*); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007) (*per curiam*).  After consideration of the issue, the Eleventh Circuit determined *Jones* remained controlling law in this circuit.  *Jones II*, 423 F. App'x at 939; *Miller*, 246 F. App'x at 661-62.  In reaching that conclusion, the Eleventh Circuit noted that agency rulings do not bind federal courts and stated:

> Even assuming that an inconsistency existed between the testimony of the vocational expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert.  Our precedent establishes that the testimony of a vocational expert "trumps" an inconsistent provision of the DOT in this Circuit.

*Miller*, 246 F. App'x at 662 (citing *Jones*, 190 F.3d at 1229-30); *see Jones II*, 423 F. App'x at 939 ("In this Circuit, a VE's testimony trumps the DOT to the extent the two are inconsistent.").  Moreover, the ALJ is permitted to base his findings about other jobs a claimant may perform "exclusively on the VE's testimony, irrespective of any inconsistency with the DOT," and need not seek further explanation.  *Jones II*, 423 F. App'x at 939.  Here, the VE supplied an appropriate explanation for the conflicts between her testimony and the DOT, but, regardless of any inconsistencies, the ALJ could properly rely on the VE's testimony as it trumps the DOT.  Accordingly, the ALJ did not err by relying on the testimony of the VE, and the decision is supported by substantial evidence in that regard.

### D.    Grids

Finally, Plaintiff asserts that the evidence does not support the ALJ's finding that Plaintiff maintained the ability to perform medium work, and, as a result, the ALJ should have found Plaintiff disabled under Medical-Vocational Rule 202.02.   At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age,

education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in the national economy which, given the claimant's impairments, the claimant can perform. *Jones*, 190 F.3d at 1228 (citation omitted); *see Foote*, 67 F.3d at 1559. "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines ("grids") and by the use of a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE. *Jones*, 190 F.3d at 1229. Indeed, exclusive reliance on the grids is not appropriate under either of those circumstances. *Phillips*, 357 F.3d at 1242.

When both exertional and non-exertional impairments exist, the grids may still be applicable, however. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Indeed, where the ALJ considers the non-exertional limitations, the ALJ need only determine whether the non-exertional limitations significantly limit the claimant's basic work skills, meaning that the claimant has limitations that prohibit him or her from performing "a *wide* range" of work at a given level. *Phillips*, 357 F.3d at 1243 (emphasis in original); *Sryock*, 764 F.2d at 836 ("'[N]on-

exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level'" (citations omitted)).   If the ALJ determines that a claimant's non-exertional limitations do not significantly limit his or her basic work skills at a specific work level, the ALJ may rely on the grids in determining whether the claimant is disabled.  *Phillips*, 357 F.3d at 1243.  If, however, the ALJ determines that a claimant's non-exertional limitations significantly limit the claimant's basic work skills at a given work level, the ALJ must consult a VE.  *Id.*  Applying the grids to a claimant who has non-exertional impairments requires the ALJ to make a "specific finding" as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level.  *Foote*, 67 F.3d at 1559; *see also Sryock*, 764 F.2d at 836.  Courts review the ALJ's determination regarding the severity of the non-exertional impairments only to determine whether it is supported by substantial evidence.  *Sryock*, 764 F.2d at 836.

In this instance, the ALJ concluded that, prior to October 24, 2014, Plaintiff experienced non-exertional limitations that significantly limited Plaintiff's ability to perform basic work skills (Tr. 29-34).  As a result, the ALJ appropriately relied upon the testimony of the VE, as opposed to the grids, to determine that Plaintiff retained a reduced range of medium work with limitations to account for the non-exertional impairments, including a limitation to performing routine tasks on a sustained basis and understanding, carrying out, and remembering simple instructions that were not quota-driven (Tr. 29-34, 73-90).  *See Phillips*, 357 F.3d at 1243.  Accordingly, given the credible exertional and non-exertional limitations, the ALJ properly utilized the testimony of the VE instead of determining Plaintiff's disability status on the basis of the girds, specifically Medical-Vocational Rule 202.02.

Moreover, Plaintiff's contention that she could not perform the exertional requirements of a reduced range of medium work does not find support in the record.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c).  As discussed more fully above, the ALJ's allegations of disabling pain and limitations with respect to her back and wrist were not entirely credible, and the ALJ properly incorporated the credible limitations into the RFC to perform a reduced range of medium work.  In determining that Plaintiff maintained the ability to perform a reduced range of medium work, the ALJ accounted for Plaintiff's exertional limitations by reducing the requirements for climbing, stooping, crouching, crawling, exposure to environmental irritants and machinery, handling, and fingering (Tr. 29).  The ALJ did not, however, reduce the requirements for lifting or carrying objects as such limitations were not supported by the record (Tr. 29).  Though Plaintiff complained of severe pain in the back and wrists and difficulty lifting that would preclude her from working (Tr. 255-57, 286-89), the evidence of record simply did not support further limitation such that Plaintiff could not perform the reduced range of medium work.  *See* 20 C.F.R. § 404.1529(a) ("However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").  For the foregoing reasons, therefore, the ALJ properly concluded that Plaintiff

maintained the ability to perform the exertional requirements of a reduced range of medium work and properly utilized the testimony of a VE instead of relying upon the grids.[2]

**IV.**

Accordingly, after due consideration and for the foregoing reasons, it is hereby

RECOMMENDED:

1.  The decision of the Commissioner be REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings as detailed herein.

2.  The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 2nd day of February, 2017.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

---

[2] On remand, however, the ALJ may address Plaintiff's complaints regarding her purported inability to lift, and any limitations imposed upon Plaintiff's RFC, to the extent the ALJ deems such complaints credible.

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.


cc:    Hon. Virginia M. Hernandez Covington
       Counsel of Record